UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  14-          (ESH) |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. § 286 (Conspiracy to Defraud the |
| JAMES NELSON, | : | Government With Respect to Claims); 18 |
| | : | U.S.C. § 287 (False Claims); 18 U.S.C. § |
| Defendant. | : | 1028(a)(7) (Fraud and Related Activity in |
| | : | Connection with Identification |
| | : | Information; and 18 U.S.C. § 2 (Aiding and |
| | : | Abetting). |
| | : | |
| _____ | : | |

## INFORMATION

The United States Attorney charges:

### COUNT ONE - CONSPIRACY TO DEFRAUD THE GOVERNMENT WITH RESPECT TO CLAIMS

### I. INTRODUCTION

**A.    Overview Regarding Tax Matters**

At all times relevant to this Information:

1.      The Internal Revenue Service (IRS) is an agency of the United States of America, Department of the Treasury, maintaining its headquarters at 1111 Constitution Avenue, NW, Washington, D.C.  The IRS has responsibility for administering provisions of the Internal Revenue Code and for the collection of income taxes.

2.      Absent the grant of an extension, individuals who earn income in excess of certain minimums are required to file a Form 1040 U.S. Individual Income Tax Return no later than April 15th of the calendar year immediately following the tax year.

3.     A Form 1040 is a tax form used by an individual to report taxable income from wages and/or from self-employment.  An activity qualifies as a business if the primary purpose for engaging in the activity is for income or profit and the taxpayer is involved in the activity with continuity and regularity.

4.     A Schedule C - Net Profit From Business is used to report profit or loss from a sole proprietorship.  The form supports and is attached to an individual's Form 1040.  Profit or loss reflected on the Schedule C, is also reported on the Form 1040.  A Schedule C-EZ is a simplified version of the Schedule C, which is used when, among other factors, business expenses do not exceed $5,000, and the business has no employees or inventory.

5.     Adjusted Gross Income is total gross income minus specific reductions.

6.     The Earned Income Tax Credit (EITC) is a tax credit intended to help taxpayers keep more of what they earn.  It is a refundable federal income tax credit for low- to moderate-income working individuals and families.  Congress originally approved the tax credit legislation in 1975 in part to offset the burden of social security taxes and to provide an incentive to work. When EITC exceeds the amount of taxes owed, it results in a tax refund to those who claim and qualify for the credit.  In order to qualify, the taxpayer must meet certain requirements and file a tax return, even if the taxpayer does not owe any tax or is not required to file an income tax return.

**B.     The Identity Theft and False Claims for Federal Income Tax Refund Conspiracy**

7.     At all times relevant herein, an extensive network of over 130 individuals, many of whom were receiving some type of public assistance, engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere, seeking over $40 million in fraudulently claimed income tax refunds.  During the approximate period 2006 through

2

present (for tax years 2005 through 2012) the co-conspirators caused the filing of at least 12,000 fraudulent federal income tax returns listing one of over 436 addresses located in the District of Columbia as the "taxpayer" address. Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

8.      Identity theft victims whose identifying information was used on fraudulent federal income tax returns include the elderly; those living in assisted living (including Alzheimer's patients and the disabled, including amputees); drug addicts; and incarcerated prisoners. Identifying information of deceased persons and of children whose parents sold their child's name, date of birth, and social security number was also utilized.

9.      The co-conspirators utilized the stolen means of identification, including names and social security numbers, of at least 131 patients of a nursing home, 84 of whom were over the age of 65 when their stolen identities were used. The patients whose identifying information was stolen included: "A. W.," "C. S.," "E. G.," "F. R.," "H. H.," "J. R.," "J. J.," "J. I.," "M. W.," "M. T.," "R. E.," "R. J.," "S. B.," and "W. H." Five of these individuals, "E. G.," "H. H.," "J. R.," "J. J," and "W. H.," were deceased at the time when their means of identification was used in the scheme alleged herein.

10.      The tax fraud scheme involved using inflated Adjusted Gross Income (AGI), by creating and utilizing fraudulent Schedules C to reflect income sufficient to generate a tax refund based upon the Earned Income Tax Credit.

11.      The scheme involved co-conspirators operating at various levels, each being financially compensated for his or her particular role, including:

A.      Those agreeing to allow their personal identifying information to be used on one or more fraudulent federal income tax returns. If the "taxpayer" was a willing participant in the scheme who provided his or her identifying information to a co-conspirator, the "taxpayer" would accompany a co-conspirator to a check cashing service, liquor store or financial institution to negotiate the check.

B.      Those permitting their residential address to be used for the delivery of U.S. Treasury checks, which were federal income tax refunds, in the names of persons who did not in fact reside at the address;

C.      Those opening a bank account or using an existing bank account for the purpose of negotiating fraudulently obtained U.S. Treasury checks, which were federal income tax refunds, issued in the names of third parties, including victims of identity theft;

D.      Those forging the endorsement of an identity theft victim on the back of a U.S. treasury check which was a fraudulently obtained federal income tax refund;

E.      Those stealing the personal identifying information of patients who were incapacitated and residing at a nursing facility, patients receiving treatment at medical facilities, persons who were incarcerated, and deceased persons, which information would be used in the scheme;

F.      Employees of financial institutions who facilitated the negotiation of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

G.      One or more U.S. Postal Service Mail Carriers who facilitated the delivery to co-conspirators of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

4

H.      Those creating and mailing to the Internal Revenue Service fraudulent federal income tax returns, Forms 1040, which contained either stolen or purchased means of identification, forged "taxpayer" signatures, and which listed as the "taxpayer's" residential address the address of a co-conspirator or associate, and falsely claimed that the "taxpayer" operated a Schedule C business as a "barber," claiming income sufficient to generate a tax refund based upon the EITC, and also fraudulently claimed dependents, who were not the dependents of the "taxpayer" listed on the income tax returns, resulting in the issuance of a fraudulent federal income tax refund.

I.      The identity theft victims in this case were unaware that their means of identification was being used to file income tax returns, did not receive the U.S. Treasury checks which were fraudulent income tax refunds, and did not endorse the checks or receive any of the proceeds.  In addition, the identity theft victims are not related to the "dependents" listed on the fraudulent income tax returns, never resided at the addresses listed on the fraudulent federal income tax returns or on the Treasury checks that were issued, and never worked as barbers.

12.     In some cases, individuals unwittingly turned over their identifying information to a co-conspirator after being told that they were due an income tax refund or were entitled to some "Obama Stimulus Money."

13.     Unindicted co-conspirators who agreed to have the fraudulent U.S. Treasury checks, which were federal income tax refunds, mailed to their residence typically received in exchange approximately $150 per check.  Those who negotiated such checks typically received in exchange approximately $250 per check.  Larger amounts of money were earned by those who solicited others to allow their addresses to be used for the receipt of fraudulently obtained U.S. Treasury checks and

those who masterminded the scheme and created and mailed the fraudulent federal income tax returns.

14.     All of the fraudulent income tax returns sought refunds. Many of the said tax returns listed the "taxpayer's" home address as an address located in the District of Columbia. District of Columbia taxpayers seeking a federal income tax refund are required to file their income tax return with the IRS Service Center in Kansas City, Missouri. In an apparent effort to frustrate IRS fraud detection efforts, the returns filed were mailed to various IRS Service Centers, nationwide.

15.     For the approximate period 2006 to present, the above-described scheme caused the filing of at least 12,000 fraudulent federal income tax returns, Forms 1040, seeking income tax refunds of at least $40 million, and caused the issuance of fraudulent U.S. Treasury checks, that is income tax refunds, which were delivered to various addresses located in the District of Columbia and elsewhere.

**C.     Defendant James Nelson's Role in the Scheme**

16.     At all times relevant herein, defendant **JAMES NELSON** resided at a residence located in the District of Columbia and was a co-conspirator in the identity theft and tax fraud scheme described herein. Among other things:

17.     Beginning on or about December 1, 2007, and continuing until on or about January 31, 2012, the defendant, **JAMES NELSON**, used his District of Columbia residential address for the receipt of U.S. Treasury checks, which were fraudulently obtained federal income tax refunds, in the names of other persons. The defendant, **JAMES NELSON**, also recruited others to receive U.S. Treasury income tax refunds at their residential addresses in the District of Columbia. Approximately 360 (three hundred sixty) fraudulent federal income tax returns, Forms 1040, were filed with the Internal Revenue Service listing the D.C. residential

6

addresses of the defendant, **JAMES NELSON**, and others he recruited as the "taxpayer" address. These 360 fraudulent income tax returns sought refunds in the total amount of approximately $908,502.00. As a result, the IRS sent out 238 (two hundred thirty-eight) U.S. Treasury refund checks, totaling approximately $524,795.34, in connection with the scheme described herein. The defendant, **JAMES NELSON**, also recruited others to negotiate at least an additional 86 (eighty-six) U.S. Treasury refund checks, totaling approximately $203,222.39, causing a total intended loss to the U.S. Treasury in the total approximate amount of $1,111,724.39.

18.     For example, in approximately 2009, at the request of the defendant, **JAMES NELSON**, unindicted co-conspirator A began receiving U.S. Treasury income tax refunds at her residential address in the District of Columbia via the U.S. Mail and providing those checks to the defendant, **JAMES NELSON**, in exchange for a payment of approximately $150 per check. This conduct continued for more than a year.

## THE CONSPIRACY

19.     Beginning on or about December 1, 2007, and continuing until on or about January 31, 2012, within the District of Columbia and elsewhere, the defendant, **JAMES NELSON**, unindicted co-conspirators, and other individuals whose identities are known and unknown, did unlawfully, knowingly, and willfully, conspire and agree together and with each other, to defraud the United States of America and an agency thereof, that is the Internal Revenue Service, of monies in the approximate amount of $1,111,724.39, through the filing of 360 fraudulent Form 1040 U.S. Individual Income Tax Returns and the negotiation of U.S. Treasury checks.

## THE GOAL OF THE CONSPIRACY

20.     It was the goal of the conspiracy that the defendant, **JAMES NELSON**, unindicted co-conspirators, and other individuals whose identities are known and unknown, would

enrich themselves and obtain money by negotiating U.S. Treasury checks, which were federal income tax refunds, generated by filing fraudulent Form 1040 U.S. Individual Income Tax Returns, the Schedule C-EZ Net Profit From Business, attached and in support of which, falsely claimed that each "taxpayer" had operated a sole proprietorship during the tax year and falsely stated that the "taxpayer" had gross receipts and at least two dependent children, when in fact, the "taxpayer" was either a victim of identity theft, was misled into providing his or her identifying information or was a willing participant in the scheme; the "dependents" were victims of identity theft; no such business had been operated by the "taxpayer;" and the "taxpayer" had no such dependents; all of which caused fraudulent income tax refunds to be issued via U.S. Treasury checks that were mailed to various addresses located in the District of Columbia and elsewhere.

## MANNER AND MEANS

21.     In order to further the objects and goals of the conspiracy, the defendant, **JAMES NELSON**, unindicted co-conspirators, and other individuals, whose identities are known and unknown, used the following manners and means, among others:

A.     The defendant, **JAMES NELSON**, would use his District of Columbia residential address for the delivery of U.S. Treasury refund checks issued in connection with the scheme described herein.

B.     The defendant, **JAMES NELSON**, would recruit other individuals to permit the use of their addresses for the delivery of U.S. Treasury checks received in the course of the scheme described herein.

C.     The defendant, **JAMES NELSON**, would recruit other individuals to negotiate U.S. Treasury refund checks received in the course of the scheme described herein.

D.     The defendant, **JAMES NELSON**, would recruit other individuals to open bank

8

accounts for the purpose of depositing U.S. Treasury refund checks received in the course of the scheme described herein.

## OVERT ACTS

22.     Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the object thereof, the defendant, **JAMES NELSON**, unindicted co-conspirators, and other individuals whose identities are known and unknown, committed the following overt acts, among others:

A.     On or before October 21, 2009, an unindicted co-conspirator created a fraudulent Form 1040, U.S. Individual Tax Return, for the tax year 2007, and a fraudulent Schedule C-EZ, in the name of P.H., a nursing home resident whose means of identification had been stolen, with a stated District of Columbia address belonging to unindicted co-conspirator A, requesting a refund of $2,349.00.

B.     On or before October 21, 2009, an unindicted co-conspirator caused the mailing of the fraudulent income tax return referenced above, by mailing it to the Internal Revenue Service, Kansas City, Missouri, 64999.

C.     On or about November 20, 2009, unindicted co-conspirator A received at her residential address in the District of Columbia a U.S. Treasury check, dated November 20, 2009, payable to P.H., in the amount of $2,349.00, which was an IRS income tax refund issued based upon the fraudulent income tax return referenced above, and provided it to the defendant, **JAMES NELSON**.

D.     On or about December 7, 2009, the $2,349.00 check described above was signed on its reverse side purportedly by P.H., endorsed "pay to the order of James Nelson," and negotiated by the defendant, **JAMES NELSON**, at Chevy Chase Bank.

E.      On or about July 19, 2010, the defendant, **JAMES NELSON**, requested that unindicted co-conspirator B open a business bank account for the purpose of depositing U.S. Treasury refund checks and offered to pay unindicted co-conspirator B $200 for each U.S. Treasury check he deposited.

F.      On or about July 26, 2010, unindicted co-conspirator B opened a business bank account at Wachovia Bank, at the request of the defendant, **JAMES NELSON**, for the purpose of depositing U.S. Treasury refund checks.

G.      On or about August 23, 2010, unindicted co-conspirator B deposited a U.S. Treasury check, dated August 13, 2010, payable to "T.M.," in the amount of $2,444.85, which he had received from the defendant, **JAMES NELSON**, into the business bank account at Wachovia Bank that he had opened at the request of the defendant, **JAMES NELSON**.

H.      On or about August 23, 2010, unindicted co-conspirator B, after depositing the $2,444.85 check described above, received a call from the defendant, **JAMES NELSON**, instructing him to withdraw the funds.

I.      On or about August 23, 2010, as per the instructions of the defendant, **JAMES NELSON**, unindicted co-conspirator B withdrew the abovementioned $2,444.85; met up with the defendant, **JAMES NELSON**, at a friend's house; and gave the defendant, **JAMES NELSON**, all of the money minus a $200 payment for unindicted co-conspirator B.

**(Conspiracy to Defraud the Government with Respect to Claims,** in violation of Title 18, United States Code, Section 286).

## COUNT TWO – <u>FALSE CLAIMS FOR REFUND</u>

1.      The allegations set forth in paragraphs 1 through 18 and 20 through 22 of Count

One of this Information are hereby re-alleged and incorporated as if fully set forth herein.

2.      On or about October 21, 2009, in the District of Columbia and elsewhere, the

defendant, **JAMES NELSON**, did make and present via the U.S. Mails to the U.S. Department

of Treasury, Internal Revenue Service, a Form 1040 U.S. Individual Tax Return, claiming an

income tax refund, knowing that the claim was false and fraudulent, and did knowingly and

intentionally aid, abet, counsel, command, induce, and procure the commission of that offense, to

wit, an unindicted co-conspirator caused the mailing of a fraudulent Form 1040, U.S. Individual

Tax Return, for the tax year 2007, in the name of P.H., with a stated District of Columbia address

belonging to unindicted co-conspirator A, claiming an income tax refund in the amount of

$2,349.00 from the U.S. Department of Treasury, and a Schedule C-EZ Net Profit from Business

in support of the return that falsely claimed that P.H. had operated a childcare business during the

tax year 2007 and had gross receipts of $10,200.00.  The Form 1040 also falsely claimed that

P.H. had two dependent children named B.C. and C.D., when, in fact, P.H. was living in a

nursing home at the time said income tax return was filed, P.H.'s means of identification had

been stolen, P.H. had operated no such business in 2007, had no such dependents, and the address

listed on the return was the address of unindicted co-conspirator A, which caused the issuance of

a fraudulent income tax refund check in the amount of $2,349.00, which was negotiated by the

defendant, **JAMES NELSON**.

**(False Claims for Refund, Aiding and Abetting,** in violation of Title 18, United States Code,
Sections 287 and 2).

## COUNT THREE - FRAUD AND RELATED ACTIVITY IN CONNECTION
## WITH IDENTIFICATION INFORMATION

1.      The allegations set forth in paragraphs 1 through 18 and 20 through 22 of Count

One of this Information are hereby re-alleged and incorporated as if fully set forth

herein.

2.      On or about October 21, 2009, in the District of Columbia, and elsewhere, the

defendant, **JAMES NELSON**, did knowingly transfer, possess, and use, without lawful

authority, and aid and abet such transfer, possession, and use of, a means of identification of

another person, to wit, the name of P.H. and the social security number of P.H., that is:  XXX-XX-

0663, with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that

constitutes a violation of Federal law, to wit, Conspiracy to Defraud the Government with

Respect to Claims, in violation of Title 18, United States Code, Section 286, the said means of

identification was transported in the U.S. mail in the course of such transfer and use, and as a result of the offense, the defendant, **JAMES NELSON,** or any other individual committing the offense, obtained anything of value, aggregating $1,000 or more during the one-year period beginning October 21, 2009, that is $2,349.00.

**(Fraud and Related Activity in Connection with Identification Information, Aiding and Abetting,** in violation of Title 18, United States Code, Sections 1028(a)(7) and (b)(2)(B) and 2)

RONALD C. MACHEN JR.
United States Attorney for
 the District of Columbia
D.C. Bar No. 447889

By: ELLEN CHUBIN EPSTEIN
Assistant U.S. Attorney
D.C. Bar No. 442861
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1773
ellen.chubin@usdoj.gov

JESSICA MORAN
Trial Attorney
Department of Justice, Tax Division
V.A. Bar. No. 85330
601 D. Street, N.W.
Washington, D.C. 20530
(202) 305-9814
jessica.n.moran@usdoj.gov

13